IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>SIMMON LEE WILCOX, et al.,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER ON ADMISSIBILITY OF CO-CONSPIRATOR STATEMENTS<br><br><br>Case No. 2:13-CR-717 TS<br><br>District Judge Ted Stewart |

This matter is before the Court to determine the admissibility of co-conspirator statements.[1] The Court held a *James*[2] hearing on September 28, 2015.[3] The Court now issues the following ruling.

## I. BACKGROUND

For purposes of determining the admissibility of co-conspirator statements under Rule 801(d)(2)(E) only, the Court finds as follows:

Defendant, Dr. Simmon Lee Wilcox, opened a medical clinic in St. George, Utah. Defendant Wilcox partnered with Defendant Benjamin David Grisel and Patricia Robichaux, an

---

[1] Defendant Simmon Lee Wilcox joined in the Motion for Pretrial *James* Hearing on Admissibility of Statements of Alleged Co-Conspirators filed by Defendant Jeremy Daniel Perkins. *See* Docket Nos. 189 and 197. Defendant Perkins has scheduled a change of plea hearing, so the Court will limit its discussion to Defendant Wilcox.

[2] *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917 (1979). A *James* hearing is the "strongly preferred" method in the Tenth Circuit of determining the admissibility of co-conspirator statements. *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994).

[3] A previous *James* hearing was held at the request of Defendant Benjamin David Grisel on June 8, 2015. *See* Docket No. 134.

1

unindicted co-conspirator, to purchase the practice of a physician who had passed away. Ms. Robichaux loaned Dr. Wilcox $50,000 to buy the practice and Dr. Wilcox was to eventually repay the loan.

At some point, Dr. Wilcox stopped making payments on the loan and an idea was formed to help pay Robichaux back. Benjamin Grisel had learned the value that oxycodone carried on the street. Grisel also knew an individual, Defendant Jeron Scott Hales, who could make false documents, specifically fake identification cards. In 2011, Grisel and Hales met with Dr. Wilcox and presented him with a plan. Dr. Wilcox could prescribe oxycodone to various individuals, including Grisel and Robichaux, using the false identifications created by Hales. Those individuals would, in turn, sell the pills for monetary gain. The same plan was pitched to Patricia Robichaux. Dr. Wilcox and Robichaux agreed.

Dr. Wilcox began prescribing medication to Benjamin Grisel, Grisel's wife Brenda Ann Grisel, and Patricia Robichaux. Each of these individuals had various fake IDs that had been prepared by Jeron Hales and received multiple prescriptions. They would then fill those prescriptions at pharmacies throughout Southern Utah and Nevada. Once the pills were obtained, they were then sold. Many of the pills were sold to Defendants Randall David Ayrton and Jeremy Daniel Perkins,[4] who would then re-sell the pills to others.

## II. DISCUSSION

Fed. R. Evid. 801(d)(2)(E) provides: "A statement that meets the following conditions is not hearsay: [t]he statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Under Fed. R. Evid. 801(d)(2)(E),

---

[4] Ayrton and Perkins also filled prescriptions under their own names.

statements by co-conspirators are properly admissible as non-hearsay at trial if the Court determines, by a preponderance of the evidence, that (1) a conspiracy existed; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made in the course of and in furtherance of the conspiracy.[5] It is the burden of the government to prove each of the elements by a preponderance of the evidence and it is the trial court that determines admissibility.[6]

In deciding whether the prerequisites for admission of the co-conspirator statements have been satisfied, the Court may consider the co-conspirator statements sought to be admitted as evidence of the conspiracy.[7] However, there must "be some independent evidence linking the defendant to the conspiracy."[8] "Such independent evidence may be sufficient even when it is not 'substantial.'"[9] Independent evidence is "evidence other than the proffered [co-conspirator] statements themselves."[10] Such evidence may include "the co-conspirators' and the officers' testimony as to their direct observations and contacts with defendant."[11]

A. EXISTENCE OF THE CONSPIRACY

The first element the government must demonstrate is the existence of a conspiracy. "To prove conspiracy, the government must show (1) two or more persons agreed to violate the law,

---

[5] *Urena*, 27 F.3d at 1490.

[6] *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995).

[7] *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996).

[8] *United States v. Martinez*, 825 F.2d 1451, 1453 (10th Cir. 1987).

[9] *Lopez-Gutierrez*, 83 F.3d at 1242.

[10] *Martinez*, 825 F.2d at 1451.

[11] *United States v. Hernandez*, 829 F.2d 988, 995 (10th Cir. 1987).

(2) the defendant knew the essential objectives of the conspiracy, (3) the defendant knowingly and voluntarily participated in the conspiracy, and (4) the alleged coconspirators were interdependent."[12]

"'To prove an agreement, the government need not offer direct proof of an express agreement on the part of the defendant. Instead the agreement may be informal and may be inferred entirely from circumstantial evidence.'"[13] However, it is not enough for the government to show only mere association with conspirators known to be involved in the crime; casual transactions between the defendant and conspirators known to be involved in the crime; or a buyer-seller relationship between the defendant and a member of the conspiracy.[14]

The government has presented sufficient evidence to show that there was an agreement between Defendants, along with Robichaux, to violate the law by distributing and possessing with the intent to distribute oxycodone. The evidence presented by the government shows that these individuals engaged in a scheme whereby Dr. Wilcox prescribed oxycodone to various individuals. These individuals, including Benjamin Grisel, Brenda Grisel, and Patricia Robichaux, used false identification cards created by Jeron Hales to obtain additional prescriptions. Once the prescriptions were filled, the pills would be sold to, among others, Randall Ayrton and Jeremy Perkins, who would re-sell the pills.

---

[12] *United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006).

[13] *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1129 (10th Cir. 2004) (quoting *United States v. Lang*, 364 F.3d 1210, 1223 (10th Cir. 2004)).

[14] *United States v. Evans*, 970 F.2d 663, 669 (10th Cir. 1992).

"To prove knowledge of the essential objectives of a conspiracy, the government does not have to show the defendant knew all the details or all the members of a conspiracy."[15] "Rather, the government only needs to demonstrate the 'defendant shared a common purpose or design with his alleged coconspirators.'"[16]

Based on the evidence and testimony presented, the Court finds that the government has presented sufficient evidence to show that Defendant and the others involved knew of the essential objectives of the conspiracy. The government has presented testimony indicating that Benjamin Grisel and Jeron Hales specifically informed Dr. Wilcox of the conspiracy and that he agreed to participate.

"A defendant may be convicted of a conspiracy only if the government proves that the defendant had knowledge of the conspiracy and voluntarily participated therein. A conspirator need not know of the existence or identity of the other members of the conspiracy or the full extent of the conspiracy, but he or she must have a general awareness of both the scope and the objective of the enterprise to be regarded as a coconspirator."[17]

For substantially the same reasons already stated, the Court finds that there is sufficient evidence that Dr. Wilcox and the other members of the conspiracy knew of the conspiracy and voluntarily participated therein.

---

[15] *Yehling*, 456 F.3d at 1240.

[16] *Id.* (quoting *Evans*, 970 F.2d at 669).

[17] *Evans*, 970 F.2d at 669–70 (internal quotation marks and citation omitted).

"Interdependence exists when 'each alleged coconspirator . . . depend[s] on the successful operation of each 'link' in the chain to achieve the common goal.'"[18] "In other words, each coconspirator's 'actions must facilitate the endeavors of other alleged coconspirators or facilitate the venture as a whole.'"[19]

Here, the government has shown sufficient evidence of interdependence. As set forth above, each Defendant, along with Patricia Robichaux, played an individual role in accomplishing the scheme. Dr. Wilcox had the authority to prescribe the medication. Jeron Hales had the ability to create the fraudulent identifications. Benjamin Grisel, Brenda Grisel, and Patricia Robichaux filled the prescriptions and facilitated the distribution of the pills to Jeremy Perkins and Daniel Ayrton, who then re-sold the pills. Each role facilitated the endeavors of the others and facilitated the venture as a whole.

B.   MEMBERS OF THE CONSPIRACY

The second element the Court must consider is whether the declarant and Defendant were both members of the conspiracy. Dr. Wilcox argues that there is not sufficient independent evidence to establish his involvement in the alleged conspiracy. The Court disagrees. In *United States v. Owens*, the Tenth Circuit held that testimony from a government agent detailing statements a defendant's co-conspirator made to the agent during an investigation was independent evidence.[20] At the *James* hearing, Investigator Skidmore discussed interviews he had with Patricia Robichaux and Benjamin Grisel. The statements made by Robichaux and

---

[18] *Yehling*, 456 F.3d at 1241 (quoting *United States v. Dickey*, 736 F.2d 571, 582 (10th Cir. 1984)).

[19] *Id.* (quoting *Evans*, 970 F.2d at 670).

[20] *Owens*, 70 F.3d at 1125.

Grisel relating to Defendant's involvement in the conspiracy constitute independent evidence. While Defendant raises legitimate questions concerning the credibility of these two individuals, their statements are further supported by documents provided by Robichaux and Grisel, the patient records obtained during the execution of the search warrants, and the copies of the driver's licenses allegedly used during the conspiracy.[21]

Based on this and the discussion set forth above, the Court finds that the government has proven by a preponderance of the evidence that at least the following individuals were members of the conspiracy: Simmon Lee Wilcox, Patricia Robichaux, Benjamin David Grisel, Brenda Ann Grisel, Jeron Scott Hales, Randall David Ayrton, and Jeremy Daniel Perkins.

C.  DURING THE COURSE AND IN FURTHERANCE OF THE CONSPIRACY

Finally, the government must demonstrate that the statements were made during the course and in furtherance of the conspiracy. A statement is made during the course of a conspiracy if it is made before the objectives of the conspiracy have either failed or been achieved.[22] "Statements by a conspirator are in furtherance of the conspiracy when they are 'intended to promote the conspiratorial objectives.'"[23] Such promotion occurs through statements that explain events of importance to the conspiracy in order to facilitate its operation, statements between co-conspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy,

---

[21] *See* Docket No. 136.

[22] *United States v. Perez*, 989 F.2d 1574, 1579 (10th Cir. 1993).

[23] *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (quoting *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986)).

7

and statements of a co-conspirator identifying a fellow co-conspirator.[24] A statement need not further the attainment of an agreement; it is enough that it further an object of the agreement.[25]

The Court is unable, at this time, to determine whether all of the statements the government seeks to introduce were made during the course and in furtherance of the conspiracy. Therefore, the Court will reserve this issue for trial and will rule upon the individual statements as they arise in that setting.

III. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for *James* Hearing (Docket No. 189) is GRANTED. It is further

ORDERED that the time from the filing of the Motion through the date of this Order is excluded from the computation of the Speedy Trial Act time pursuant to 18 U.S.C. § 3161(h)(1)(D) and (H).

DATED this 20th day of October, 2015.

BY THE COURT:

Ted Stewart
United States District Judge

---

[24] *Id.*

[25] *United States v. Magleby*, 420 F.3d 1136, 1145 (10th Cir. 2005).